**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1859
_____

LINDSEY GULDEN; DAMIAN BURCH,
Appellants

v.

EXXON MOBIL CORPORATION
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 3:22-cv-07418)
District Judge: Honorable Michael A. Shipp
_____

Argued: March 6, 2024

Before: JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed: October 15, 2024)

Neil L. Henrichsen          **[ARGUED]**
HENRICHSEN LAW GROUP
1725 I Street NW
Suite 300
Washington, DC 20006

*Counsel for Appellants Lindsey Gulden and Damian Burch*

Siri Nelson
NATIONAL WHISTLEBLOWER CENTER
3238 P Street NW
Washington, DC 20007

*Counsel for Amicus National Whistleblower Center in Support of Appellant*

David Edeli                    **[ARGUED]**
UNITED STATES DEPARTMENT OF LABOR
OFFICE OF THE SOLICITOR
N-2716
200 Constitution Avenue NW
Washington, DC 20210

*Counsel for Amicus United States Department of Labor in Support of Appellant*

Richard J. Cino          **[ARGUED]**
Bianca M. Olivadoti
JACKSON LEWIS
200 Connell Drive
Suite 2000
Berkeley Heights, NJ 07922

    *Counsel for Appellee Exxon Mobil Corporation*

David M. Morrell          **[ARGUED]**
JONES DAY
51 Louisiana Avenue NW
Washington, DC 20001

    *Counsel for Amici United States Chamber of
Commerce, Association of American Railroads,
National Association of Manufacturers, and
Washington Legal Foundation in Support of
Appellee*

Daryl Joseffer
Tara S. Morrissey
Kevin R. Palmer
UNITED STATES CHAMBER LITIGATION CENTER
1615 H Street NW
Washington, DC 20062

    *Counsel for Amicus United States Chamber of
Commerce in Support of Appellee*

---

OPINION OF THE COURT

---

PHIPPS, *Circuit Judge*.

After two employees of a publicly traded company raised concerns that the company overstated its earnings, they were fired. They then availed themselves of the federal protections for securities-fraud whistleblowers by filing a complaint with the Secretary of Labor. That prompted an administrative adjudicatory proceeding in which they obtained a preliminary order for reinstatement to their prior positions. The company, however, refused to comply with that order and did not reinstate them.

The former employees then initiated a separate action against the company in the District Court to enforce that order. The District Court dismissed that enforcement action for a lack of subject-matter jurisdiction because, under its interpretation of the relevant statute, it lacked the power to compel compliance with the preliminary order.

The former employees appealed that ruling. But while this appeal was pending, they elected to forgo the rest of the administrative process and to instead challenge their terminations through a separate civil action in federal court. After they did so, the agency terminated the administrative proceedings. The company then moved to dismiss this appeal on mootness grounds.

The former employees' request to enforce the agency's preliminary reinstatement order now fails to satisfy the redressability requirement for Article III standing. That is so because the preliminary reinstatement order was extinguished with the dismissal of the administrative proceedings and a

federal court cannot compel compliance with a non-extant administrative order. The former employees have therefore lost Article III standing during the pendency of this litigation, and there is no applicable exception to prevent a dismissal on mootness grounds. Accordingly, we will vacate the District Court's judgment and remand with instructions for the District Court to dismiss the case on mootness grounds.

## I. BACKGROUND

In 2019, Lindsey Gulden, Ph.D., and Damian Burch, Ph.D., worked for Exxon Mobil Corporation, one of the largest oil and gas companies in the world. As part of their job duties, they analyzed and evaluated Exxon Mobil's oil reserves in the Delaware Basin in western Texas and southern New Mexico.

On April 26, 2019, Exxon Mobil announced its earnings as a publicly traded company. In doing so, Exxon Mobil provided its projections for oil and gas production from the Delaware Basin. Gulden and Burch, however, believed that Exxon Mobil's earnings statement did not account for the slower-than-expected drilling speeds in the Delaware Basin in 2018 and 2019 and, as a result, overestimated the value of the oil and gas production by about $20 billion. Based on that concern, they objected to the earnings statement internally. Then, on September 13, 2020, *The Wall Street Journal*, in an article that identified its sources only as unnamed current and former employees, reported that Exxon Mobil had manipulated its projections related to the Delaware Basin by overestimating how quickly it could drill. Within three months of the article's publication, Exxon Mobil fired both Gulden and Burch.

The Sarbanes-Oxley Act of 2002, commonly abbreviated as 'SOX,' contains protections for securities-fraud whistleblowers and provides an opportunity for redress through an administrative enforcement action. *See* 18 U.S.C. § 1514A(b)(1)(A). On February 10, 2021, Gulden and Burch filed an administrative complaint with the Secretary of Labor claiming that Exxon Mobil terminated their employment

5

unlawfully. Specifically, they asserted that Exxon Mobil violated SOX's prohibitions on terminating an employee of a publicly traded company for (i) providing a supervisor with information reasonably believed to relate to securities fraud, *see id.* § 1514A(a)(1)(C), and for (ii) causing a proceeding to be filed related to a violation of a federal securities law, *see id.* § 1514A(a)(2). Based on those claimed violations, Gulden and Burch sought several forms of relief, including reinstatement. *See id.* § 1514A(c).

That administrative action started auspiciously for Gulden and Burch. After a preliminary investigation, a designee of the Secretary of Labor found reasonable cause to believe that Exxon Mobil had terminated them in violation of SOX's whistleblower protections. And, over Exxon Mobil's objection, on October 6, 2022, the official issued a preliminary order directing Exxon Mobil to reinstate them to their former positions.

The problem for Gulden and Burch was that Exxon Mobil refused to comply with the preliminary reinstatement order. To enforce the order, they initiated this lawsuit for injunctive relief in District Court in December 2022. In its motion to dismiss, Exxon Mobil disputed the District Court's jurisdiction to compel compliance with the preliminary reinstatement order issued by the Department of Labor. The District Court granted that motion and dismissed the case for a lack of subject-matter jurisdiction. *See Gulden v. Exxon Mobil Corp.*, 2023 WL 3004854, at *3–4 (D.N.J. Apr. 19, 2023). Through a timely appeal, Gulden and Burch invoked this Court's appellate jurisdiction to challenge that final decision. *See* 28 U.S.C. § 1291; Fed. R. App. P. 4(a)(1)(A).

The administrative adjudication remained active while Gulden and Burch were trying to enforce the preliminary reinstatement order in federal court. And in April 2024, the administrative law judge dismissed Gulden and Burch's second claim – the one predicated on causing a proceeding

6

related to securities fraud to be filed, *see* 18 U.S.C. § 1514A(a)(2) – because Gulden and Burch did not identify any such proceeding. By that time, the administrative adjudication had been ongoing for more than 1,150 days, and SOX contains a 'kick out' provision that permits a putative whistleblower to sue in federal district court if his administrative complaint is not finally resolved within 180 days. *See id.* § 1514A(b)(1)(B); *Jaludi v. Citigroup & Co.*, 57 F.4th 148, 152 (3d Cir. 2023). In June 2024, Gulden and Burch exercised that kick-out option and sued Exxon Mobil in federal court rather than continue with the administrative adjudication of their remaining whistleblower claim – the one for providing a supervisor with information reasonably believed to relate to securities fraud, *see* 18 U.S.C. § 1514A(a)(1)(C).

After receiving notice of Gulden and Burch's election to litigate in federal court, the administrative law judge dismissed the administrative proceedings through an order dated July 2, 2024. Exxon Mobil then moved to dismiss this appeal on mootness grounds. In opposing that motion, Gulden and Burch argue that despite the dismissal of the administrative proceedings, the preliminary order of reinstatement may still be enforced in federal court.

## II. DISCUSSION

For a case to be moot in the Article III sense, all plaintiffs who once had Article III standing must have lost it, and none of the recognized exceptions to mootness can apply. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("The 'case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate.'" (quoting *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990))); *see also Acheson Hotels, LLC v. Laufer*, 601 U.S. 1, 8–9 (2023) (Thomas, J., concurring in the judgment) (explaining "[a]s an analytical matter" that the question of standing is "logically antecedent" to mootness). Article III standing requires (i) an injury-in-fact; (ii) fairly traceable to the defendant's conduct;

7

and (iii) capable and likely of being prevented or redressed through the exercise of traditional judicial powers. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  A plaintiff must satisfy those elements when it first brings a claim and requests relief. *See Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) ("[A] plaintiff must demonstrate standing separately for each form of relief sought.").  But the loss of one or more of those elements during the pendency of the litigation, if established by the defendant, subjects the affected claims or requests for relief to potential dismissal on mootness grounds. *See West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (explaining that the government "bears the burden to establish that a once-live case has become moot"); *FBI v. Fikre*, 601 U.S. 234, 241 (2024) (confirming that the burden of proving mootness applies to both governmental defendants and private defendants alike).  The loss of Article III standing by itself, however, does not moot a case; the defendant must also demonstrate that no mootness exception applies. *See Friends of the Earth*, 528 U.S. at 190 ("Careful reflection on the long-recognized exceptions to mootness, however, reveals that the description of mootness as 'standing set in a time frame' is not comprehensive."); *Lutter v. JNESO*, 86 F.4th 111, 130 (3d Cir. 2023) ("Despite its similarities to standing, mootness is not merely the post-suit absence of standing.").  Thus, a case cannot be moot if a plaintiff establishes Article III standing, and the defendant is unable to demonstrate both the loss of standing and the inapplicability of the exceptions to mootness.

### Injury-in-Fact – Then and Now

For a plaintiff to have an injury-in-fact, there must be an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408–09 (2013); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).  When they filed this suit, Gulden and Burch had such an injury-in-fact because Exxon Mobil was not complying with the preliminary administrative reinstatement order.  By not reinstating Gulden

and Burch to their prior positions despite that order, Exxon Mobil invaded their legally protected interests and thus inflicted an injury. That injury was concrete – not abstract – because the order required their reinstatement to their former positions at Exxon Mobil. *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) ("Under Article III, federal courts do not adjudicate hypothetical or abstract disputes."). That injury was also particularized because the order applied personally to Gulden and Burch. *See Spokeo*, 578 U.S. at 339 ("For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" (quoting *Lujan*, 504 U.S. at 560 n.1)). Finally, that injury was actual because the order was "not conjectural or hypothetical" but instead commanded their reinstatement, and Exxon Mobil had not done so. *Id.* (quoting *Lujan*, 504 U.S. at 560). Thus, when they filed this suit, Gulden and Burch had the requisite injury-in-fact for Article III standing. And that injury-in-fact remains unabated because Exxon Mobil did not comply with the reinstatement order.

**Fairly Traceable Causation – Then and Now**

Gulden and Burch's claims have continuously satisfied the causation element for Article III standing since this lawsuit's inception. When this suit was filed, the injury-in-fact could be fairly traced to Exxon Mobil's non-compliance with the preliminary reinstatement order. *See Dep't of Educ. v. Brown*, 600 U.S. 551, 561 (2023) ("[T]here must be a causal connection between the injury and the conduct complained of." (quotation omitted)). Because that connection was between the injury-in-fact and Exxon Mobil's actions – as opposed to "the independent action of some third party not before the court" – the causation element was met. *Lujan*, 504 U.S. at 560 (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). And because Exxon Mobil has not reinstated Gulden or Burch, their claimed injury-in-fact remains fairly traceable to Exxon Mobil to this day.

9

**Redressability – Then but Not Now**

Gulden and Burch's injury-in-fact was initially redressable because it was capable and likely of being resolved through the exercise of a traditional judicial function. *See Spokeo*, 578 U.S. at 338; *see also United States v. Texas*, 599 U.S. 670, 676 (2023) ("[T]he asserted injury [must] traditionally [be] redressable in federal court."); *Raines v. Byrd*, 521 U.S. 811, 819 (1997) ("[T]he dispute [must be] 'traditionally thought to be capable of resolution through the judicial process[.]'" (quoting *Flast v. Cohen*, 392 U.S. 83, 97 (1968))). The only relief that Gulden and Burch sought in this suit was a court-issued injunction compelling Exxon Mobil to reinstate them consistent with the preliminary order. By requesting an order for a party to perform "an affirmative act or course of conduct," Gulden and Burch sought a mandatory injunction from the District Court, and that is a form of relief within the traditional exercise of judicial powers. Dan B. Dobbs & Caprice L. Roberts, *Law of Remedies: Damages, Equity, Restitution* § 2.9(1), at 165 (3d ed. 2018); *cf. id.* at 164 ("Reinstatement in a job is a remedy for job discrimination in some cases and the reinstatement order is a form of injunction."). And from the time that Gulden and Burch filed this suit until the dismissal of the administrative proceeding, an injunction enforcing the reinstatement order would likely have provided some redress for their injury-in-fact: a favorable ruling from a federal court would have compelled Exxon Mobil to reinstate them.

But with the dismissal of the administrative proceedings on July 2, 2024, the injury-in-fact is no longer likely to be redressed through a favorable court ruling. As a benchmark, in an Article III court, only ancillary matters – those collateral to the lawsuit, such as fee petitions and bills of costs – survive the dismissal of the suit. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80 (1994) (explaining that under their ancillary jurisdiction, courts may exercise powers over incidental collateral matters after the dismissal of an action). Also, in federal court, an order granting preliminary injunctive relief is not considered an ancillary matter, and it is

10

extinguished upon the dismissal of the suit. *See United States ex rel. Bergen v. Lawrence*, 848 F.2d 1502, 1512 (10th Cir. 1988) ("With the entry of the final judgment, the life of the preliminary injunction came to an end, and it no longer had a binding effect on [anyone]. The preliminary injunction was by its very nature interlocutory, tentative and impermanent." (quoting *Madison Square Garden Boxing, Inc. v. Shavers*, 562 F.2d 141, 144 (2d Cir. 1977))); 11A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2947 (3d ed. 2013 & Supp. 2024) ("[A] preliminary injunction normally lasts until the completion of the trial on the merits, unless it is dissolved earlier by court order or the consent of the parties."). By way of comparison, the adjudicatory powers of federal agencies cannot exceed the judicial powers of federal courts, and for disputes involving private rights, the adjudicatory powers of federal agencies are at their nadir. *See SEC v. Jarkesy*, 144 S. Ct. 2117, 2132 (2024) ("[M]atters concerning private rights may not be removed from Article III courts."); *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 70 (1982) ("Private-rights disputes . . . lie at the core of the historically recognized judicial power."); *Murray's Lessee v. Hoboken Land & Improvement Co.*, 59 U.S. (18 How.) 272, 284 (1855) (explaining that Congress cannot "withdraw from judicial cognizance any matter which, from its nature, is the subject of a suit at the common law, or in *equity*, or admiralty" (emphasis added)). Thus, because a preliminary injunction in federal court has no binding effect after the dismissal of the suit, a preliminary reinstatement order issued by an agency cannot survive dismissal of the administrative proceeding. Consistent with that principle, both the Administrative Procedure Act and the relevant Department of Labor regulations set forth the powers held by the agency in adjudicating disputes involving SOX whistleblowers, and neither provides for the continuation of a preliminary order after the dismissal of the proceeding. *See* 5 U.S.C. § 556(c); 29 C.F.R. § 18.12(b). Complementing those authorities is an opinion by the Department of Labor's Administrative Review Board explaining that, after a SOX

11

claimant sues in federal district court, the agency "no longer ha[s] jurisdiction to enter any order in the case other than one dismissing it on the ground that [the claimant] removed the case to district court." *Powers v. Pinnacle Airlines, Inc.*, ARB Case No. 05-138, 2005 WL 4889054, at *3 (Dep't of Labor Oct. 31, 2005). In sum, broad Article III principles as well as the statutory and regulatory limitations of the Department of Labor's powers leave no doubt that a preliminary reinstatement order does not survive dismissal of the underlying administrative proceeding – especially after a SOX whistleblower elects to sue in federal court.[1]

Without an extant administrative order, there is nothing for a federal court to enforce – and enforcement of the preliminary reinstatement order is the only relief requested in this suit. *See Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("No matter how vehemently the parties continue to dispute the lawfulness of the conduct that precipitated the lawsuit, the case is moot if the dispute 'is no longer embedded in any actual controversy about the plaintiffs' particular legal rights.'" (quoting *Alvarez v. Smith*, 558 U.S. 87, 93 (2009))). Thus, Gulden and Burch's request to enforce the now extinguished preliminary reinstatement order is not presently redressable.

_____

[1] Our dissenting colleague frames the redressability issue as whether the mere initiation of a federal suit through the kick-out provision, *see* 18 U.S.C. § 1514A(b)(1)(B), suffices to moot a preliminary order of reinstatement issued in administrative proceedings. That circumstance presents, admittedly, a more difficult question, but that is not the scenario here because after Gulden and Burch exercised the kick-out option, the presiding administrative law judge issued an order dismissing the administrative proceedings, and, as described above, that final order extinguishes the prior preliminary reinstatement order in those administrative proceedings.

12

**The Inapplicability of the Relevant Mootness Exceptions**

In light of Gulden and Burch's current lack of Article III standing, this case is moot if no exception to a dismissal on mootness grounds applies. And here, the only potentially applicable exceptions are for voluntary cessation and for conduct capable of repetition yet evading review. *See Lutter*, 86 F.4th at 131 ("[T]he absence of Article III standing is a necessary condition for mootness, but due to the voluntary-cessation and capable-of-repetition-yet-evading-review exceptions, it is not . . . a sufficient condition.").[2]

The voluntary-cessation exception applies when a defendant ceases the allegedly illegal conduct that caused the injury but remains "free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953); *see also Knox v. Serv. Emps. Int'l Union, Local 1000*, 567 U.S. 298, 307 (2012) ("[T]he voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed.").[3] But here the defendant, Exxon Mobil, did not voluntarily change its conduct that

---

[2] The two other mootness exceptions do not apply here. As a civil case, this case does not implicate the collateral consequences doctrine for criminal matters. *See Sibron v. New York*, 392 U.S. 40, 53–54 (1968). Nor is it a class action, which in some cases may proceed even if the named plaintiff's claims are rendered moot. *See Sosna v. Iowa*, 419 U.S. 393, 399 (1975).

[3] *Cf. Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (explaining that the voluntary-cessation exception can be defeated when "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation" (citations and internal quotations omitted)).

caused the injury-in-fact. To the contrary, Exxon Mobil took the same position throughout: it refused to reinstate Gulden and Burch. Moreover, the loss of Article III standing here does not stem from any action by Exxon Mobil, but rather from Gulden and Burch's decision to litigate their claims in federal court pursuant to 18 U.S.C. § 1514A(b)(1)(B), which led to the dismissal of the administrative proceedings and the extinguishment of the preliminary reinstatement order. That voluntary change of conduct by plaintiffs – not the defendant – does not satisfy the voluntary cessation exception. *See Friends of the Earth*, 528 U.S. at 189 (explaining that the voluntary cessation exception turns on "the defendant's voluntary conduct").[4]

For similar reasons, the capable-of-repetition-yet-evading-review exception does not apply here either. The capable-of-repetition prong of the exception requires "'a reasonable expectation' or a 'demonstrated probability' that 'the *same*

---

[4] The voluntary cessation doctrine is inapplicable for an additional reason. That doctrine concerns the loss of an injury-in-fact during the course of the litigation as a result of the defendant's conduct. In that circumstance, the burden on the defendant to establish mootness is elevated. *See West Virginia v. EPA*, 597 U.S. at 719 (explaining that the defendant's burden of establishing mootness is "'heavy' where . . . '[t]he only conceivable basis for a finding of mootness in th[e] case is [the respondent's] voluntary conduct'" (quoting *Friends of the Earth*, 528 U.S. at 189) (alterations in original)). But here, Exxon Mobil makes no effort to prove that the injury-in-fact requirement is no longer met. Rather, mootness arises because of the lack of redressability, which Exxon Mobil has established based on the order dismissing the administrative proceedings. *See Acheson Hotels, LLC*, 601 U.S. at 5 (holding that a case was moot when it was voluntarily dismissed by the plaintiff after a grant of certiorari but making no mention of the voluntary cessation exception or an elevated burden on the defendant to establish mootness).

controversy will recur involving the *same* complaining party.'" *FEC v. Wis. Right to Life, Inc.*, 551 U.S. 449, 463 (2007) (emphasis added) (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam)); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("[T]he capable-of-repetition doctrine applies only in exceptional situations, and generally only where the named plaintiff can make a reasonable showing that he will again be subjected to the alleged illegality."). Yet here, there is no reasonable expectation or demonstrated probability that Gulden and Burch will again invoke the SOX whistleblower protections against Exxon Mobil. *See Alvarez*, 558 U.S. at 93 (refusing to apply the capable-of-repetition-yet-evading-review exception when "nothing suggests that the individual plaintiffs will likely again prove subject to the [defendant's allegedly illegal] seizure procedures"). Also, to satisfy the evading-review prong of the exception, "the challenged action [must be] in its duration too short to be fully litigated prior to its cessation or expiration[.]" *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (per curiam). But there was nothing too short about the nature of Exxon Mobil's refusal to comply with the preliminary reinstatement order that would prevent judicial review. Exxon Mobil had disobeyed that order for over 600 days – from its issuance on October 6, 2022, until the dismissal of the administrative proceedings on July 2, 2024. Even more, Exxon Mobil demonstrated a willingness to remain in defiance of the order as long as the administrative proceedings were ongoing. Thus, neither prong of the exception applies.

## III. CONCLUSION

Without Article III standing and without satisfying either relevant mootness exception, Gulden and Burch's claim for an injunction enforcing the now extinguished preliminary reinstatement order is moot. Because mootness is a justiciability doctrine – meaning a jurisdictional principle grounded in the Constitution instead of a federal statute – a mootness determination on appeal forecloses not only this Court's statutory appellate jurisdiction but also a district

15

court's statutory subject-matter jurisdiction. Accordingly, even after a mootness determination, this Court "retain[s] authority to fashion a decree clarifying the effect of the mootness on the district court's initial determination." *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 34 (3d Cir. 1985). And consistent with the long-established practice of the Supreme Court, we will vacate the judgment of the District Court and remand the case with instructions to dismiss it on mootness grounds. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) ("The established practice of the Court in dealing with a civil case from a court in the federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss."); *see also N.J. Tpk. Auth.*, 772 F.2d at 34 (vacating a district court's decision following a mootness determination on appeal and remanding "with directions to dismiss the action in order to strip the decision of legal consequences" (citing *Munsingwear*, 340 U.S. at 40–41)).

16

**FREEMAN**, *Circuit Judge*, dissenting:

The Sarbanes-Oxley Act ("SOX") prohibits companies from retaliating against their employees who report securities fraud or assist in securities-fraud investigations. To protect securities-fraud whistleblowers, SOX permits the Secretary of Labor to order the immediate reinstatement of an employee based on a preliminary showing that he was fired for protected activity. The employer may object, but that does not stay the preliminary reinstatement order—it remains in effect pending a hearing and the Secretary's final decision about whistleblower retaliation.

SOX also includes a kick-out provision: If the Secretary takes more than 180 days to adjudicate a retaliation complaint, the employee may abandon his administrative action and pursue relief in a federal district court, without first obtaining a final agency decision.

Here, Plaintiffs Lindsey Gulden and Damian Burch questioned the truthfulness of Exxon Mobil's financial reporting, including its Securities and Exchange Commission filings. The company later fired them. They filed a SOX complaint, and the Secretary of Labor investigated. She found reasonable cause to believe that Exxon fired Plaintiffs in violation of SOX, so she ordered the company to reinstate them with back pay while she continued to adjudicate their complaint. But Exxon Mobil ignored that order, so Plaintiffs sued them in District Court to enforce it. The District Court concluded that it lacked jurisdiction to enforce the preliminary reinstatement order, and Plaintiffs filed this appeal.

1

While the appeal was pending, the administrative proceeding continued. In June 2024, over three and a half years had passed since Plaintiffs first filed their complaint with the Secretary, and Exxon Mobil remained noncompliant with the Secretary's October 2022 preliminary reinstatement order. Rather than continue to await a final decision from the Secretary, Plaintiffs kicked their complaint out of the agency and into the District Court. As a result, the Secretary dismissed the administrative proceeding.

Exxon Mobil now asks us to dismiss this appeal. It argues that the end of the administrative proceeding renders this appeal moot, and the majority agrees. But Exxon Mobil must establish mootness. In my view, it has not. Therefore, rather than dismiss this appeal on mootness grounds, I would address whether the District Court has subject matter jurisdiction to enforce a preliminary reinstatement order. (To my mind, it does not.)

I

A SOX administrative action proceeds as follows: First, an employee who alleges that his employer discharged or otherwise harmed him because of his participation in a protected activity files a complaint with the Secretary of Labor. 18 U.S.C. § 1514A(b)(1)(A). The Secretary then adjudicates the matter using the procedures outlined in an air safety whistleblower protection statute, the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR21"). *Id.* § 1514A(b)(2)(A) (stating that a SOX complaint filed with the Secretary is governed by the procedures set forth in 49 U.S.C. § 42121(b)). Under AIR21, the Secretary has sixty days to decide if there is reasonable cause to believe the complaint has merit and to issue findings. 49 U.S.C.

2

§ 42121(b)(2)(A).[1]  If she finds merit to the complaint, she must issue a preliminary order directing the employer to (1) take affirmative action to abate the violation, (2) reinstate the complainant to his former position with back pay, and (3) provide compensatory damages.  *Id.*; *id.* § 42121(b)(3)(B).  The preliminary order becomes final (and not subject to judicial review) if no one objects to it.  *Id.* § 42121(b)(2)(A); 29 C.F.R. § 1980.106(b).

If a party objects to a preliminary order, an administrative law judge ("ALJ") will hold a hearing, make factual findings, and issue a decision.  29 C.F.R. §§ 1980.106(a), 1980.109.  But "[t]he filing of such objections shall not operate to stay any reinstatement remedy contained in the preliminary order."  49 U.S.C. § 42121(b)(2)(A).  A party may obtain review of an ALJ's final order in a United States Court of Appeals.  *Id.* § 42121(b)(4)(A).

But SOX also provides an alternative path to judicial review.  Eschewing the standard final-agency-action requirement,[2] SOX permits a complainant to sue in a district court if the Secretary of Labor does not issue a final decision 180 days after the complaint is filed.  18 U.S.C. § 1514A(b)(1)(B); *Jaludi v. Citigroup & Co.*, 57 F.4th 148,

---

[1] It appears that the 60-day requirement is aspirational.  Here, the Secretary took twenty months to make a preliminary determination.

[2] *See Bennett v. Spear*, 520 U.S. 154, 175 (1997) ("The [Administrative Procedure Act], by its terms, provides a right to judicial review of all '*final* agency action for which there is no other adequate remedy in a court.'" (emphasis added) (quoting 5 U.S.C. § 704)).

152 (3d Cir. 2023) (noting that SOX's "kick-out provision . . . lets a party sue in district court if the administrative process drags on too long").

SOX is silent about the interplay between preliminary reinstatement and the kick-out provision. When an employee obtains a preliminary reinstatement order and then kicks his complaint to a court, does the preliminary reinstatement order immediately dissolve? Or does it remain in effect unless a district court alters it? Although Congress did not answer these questions in SOX, it made two things clear: (1) an employee who makes a preliminary showing of retaliation for reporting securities fraud must be immediately reinstated and must remain employed pending a final agency decision, 49 U.S.C. § 42121(b)(2)(A), and (2) when the Secretary takes too long to make a final decision, a complainant may bypass the Secretary and seek relief in court, 18 U.S.C. § 1514A(b)(1)(B). Reading these provisions together, I cannot conclude with certainty that a preliminary reinstatement order dissolves when a complainant seeks relief from a court. Therefore, in my view, Exxon Mobil has not carried its burden of demonstrating mootness. *See West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (emphasizing that the defendant must establish mootness).

Exxon Mobil argues that a plaintiff who files a complaint in district court under SOX's kick-out provision "essentially reject[s] the Preliminary Order of reinstatement," Exxon Mobil Mot. Dismiss, at 6–7, but it offers no support for

4

that argument.[3]  And no court has considered this issue with regard to SOX or any parallel whistleblower protection statute.[4]  Absent a compelling argument from Exxon Mobil or guidance from the statute, the majority draws an analogy to a preliminary injunction ("PI") issued in district court.  Because a PI is extinguished when a district court action is dismissed, the majority reasons that a SOX preliminary reinstatement order must similarly be extinguished when the agency action is dismissed.  Maj. Op., Part II.  I am not persuaded.

When a complainant kicks his case to a district court, the agency dismisses the administrative action.  But that dismissal casts no doubt on the Secretary's preliminary determination that the complaint has merit.  In fact, a dismissal in this scenario is unrelated to the complaint's merits.  It simply recognizes the complainant's statutory prerogative to obtain a final decision from a court because the agency took too long.  And given how Congress prioritized reinstatement of putative securities-fraud whistleblowers while they pursue final

---

[3] Exxon Mobil purports to rely on *Stone v. Instrumentation Lab'y Co.*, 591 F.3d 239, 246 (4th Cir. 2009), but its reliance is misplaced.  There, the Fourth Circuit merely reiterated SOX's plain language: that judicial review under the kick-out provision is de novo.  18 U.S.C. § 1514A(b)(1)(B).  And the complainant in *Stone* did not prevail at any stage of the agency proceeding, so he did not obtain a preliminary reinstatement order before kicking his complaint to a district court.  591 F.3d at 242.

[4] Like SOX, the Federal Railroad Safety Act, 49 U.S.C. § 20109(d)(3), and the Surface Transportation Assistance Act, 49 U.S.C. § 31105(c), incorporate AIR21's procedures for preliminary restatement and contain kick-out provisions.

5

decisions on their complaints, I cannot conclude that a kick-out dismissal extinguishes a preliminary reinstatement order. Therefore, I cannot say this appeal is moot.

II

Having rejected the mootness argument, I would address the original question raised in this appeal: whether the District Court has jurisdiction to enforce a SOX preliminary reinstatement order. In my view, it does not.

"Federal courts are courts of limited jurisdiction. [We] possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The party asserting jurisdiction must overcome the presumption that his cause lies outside of our limited jurisdiction. *Id.* Here, Plaintiffs have not done so.

Plaintiffs rely on AIR21 to assert district-court jurisdiction over preliminary reinstatement orders. AIR21 creates a private cause of action to enforce "an order . . . issued under paragraph [(b)](3)," and it confers jurisdiction in "[t]he appropriate United States district court . . . to enforce such order." 49 U.S.C. § 42121(b)(6)(A). Paragraph (b)(3)— captioned "Final order"—addresses (among other things) the remedies the Secretary of Labor must order if a complainant prevails after a hearing. *Id.* § 42121(b)(3)(B). At the final-order stage, if the Secretary determines that a company retaliated against a complainant for protected activity, she orders reinstatement and other relief. *Id.*

Plaintiffs contend that the jurisdictional provision encompasses a preliminary order issued under paragraph (b)(2), because paragraph (b)(2) incorporates paragraph

6

(b)(3)'s remedies. *See id.* § 42121(b)(2)(A) ("[T]he Secretary shall [issue] a preliminary order providing the relief prescribed by paragraph [(b)](3)(B)."). But a preliminary order under paragraph (b)(2) is not the equivalent of a final order under paragraph (b)(3) simply because both may include reinstatement. The two types of reinstatement orders remain distinct in several ways. For one, each has a different standard. The Secretary may issue a preliminary reinstatement order based on "reasonable cause to believe that a violation . . . has occurred," *id.*, but she may issue a final reinstatement order only if she "determines that a violation . . . has occurred," *id.* § 42121(b)(3)(B). The orders are also issued at different stages of the agency proceeding. While the Secretary only investigates before issuing a preliminary order, *id.* § 42121(b)(2)(A), she must do more (conduct a hearing) before issuing a final order, *id.* § 42121(b)(3)(B). Finally, even if a preliminary order becomes final because no party objects to it, that order remains protected from judicial review. *Id.* § 42121(b)(2)(A). Given these differences, it is logical that Congress authorized district courts to enforce paragraph (b)(3) orders but not paragraph (b)(2) orders.

The only Court of Appeals to address a district court's jurisdiction to enforce a SOX preliminary order did not reach a majority. In *Bechtel v. Competitive Techs., Inc.*, one judge concluded that district courts lack jurisdiction to enforce preliminary reinstatement orders, 448 F.3d 469, 473 (2d Cir. 2006) (Jacobs, J.), and a second judge concurred in the court's judgment but declined to answer the jurisdictional question, *id.* at 476 (Level, J., concurring). The third judge would have held that district courts have jurisdiction to enforce preliminary reinstatement orders. *Id.* at 484–88 (Straub, J., dissenting). The dissenting judge addressed SOX's "urgent statutory

7

purpose" to address corporate fraud that threatened investors' faith in financial markets and the American economy. *Id.* at 484. He recounted that Congress's tools to combat this problem could only work if Congress also protected securities-fraud whistleblowers from retaliation. *Id.* SOX's whistleblower protection provisions, he reasoned, "make[] clear that immediate reinstatement is paramount, which cuts against any interpretation that would allow an employer to ignore a reinstatement order with impunity." *Id.*

I agree that judicial enforcement of preliminary reinstatement orders would further SOX's purpose. Nonetheless, I discern no conferral of jurisdiction from Congress. Therefore—notwithstanding that employers may flout preliminary reinstatement orders, as Exxon Mobil did here—I would affirm the District Court's order dismissing Plaintiffs' complaint for lack of subject matter jurisdiction.

For these reasons, I respectfully dissent.